verdi.t, the question of fact was determined as stated. The correctness of such decision is challenged by the motion.

[1] It appeared from the face of the message as delivered that the sender had sent and paid for a message containing 13 words. The message as delivered contained only 12 words. The defendant, before delivering the message, had actual notice that one word had been omitted or lost in transmission. It was then called upon to take proper steps to ascertain the correctness of the message it was about to deliver. The missing word is a most important one, entirely changing the message from an affirmative statement that Taylor did not want the Alhambra Rink on the 26th of April to one that he did want it on that date. With no explanation whatever as to why the essential word was omitted, there can be no escape from the conclusion that its omission was either intentional or the result of a total want of any care at all. The slightest care on the part of the defendant would have discovered that some word was missing. No other conclusion could have been reached than that the negligence of the defendant was gross, from the liability for which it is not permitted to exempt itself by restrictions and conditions printed upon its sending and receiving blanks. Weld v. Postal, 199 N. Y. 98, 92 N. E. 415; Pearsall v. Western Union, 124 N. Y. 265, 26 N. E. 534, 21 Am. St. Rep. 662; Dixon v. Western Union, 3 App. Div. 61, 38 N. Y. Supp. 1056.

[2] It could have been reasonably anticipated by the defendant that injury would be occasioned the occupants of the Alhambra Rink, as the probable consequence of such negligence. From the telegrams quoted and the one sent by Brown to Taylor on the 4th of April, 1906, it clearly appears that Brown was not an undisclosed principal of the plaintiff; and it does appear that the plaintiff was the beneficiary of these messages.

Motion denied.

---

WOOD MFG. & REALTY CO. OF LONG ISLAND v. THOMPSON et al.

(Supreme Court, Appellate Division, Second Department. February 23, 1912.)

CONTRACTS (§ 272*)—TERMINATION—NEW CONTRACT—CREATION.·

> A contract having been entered into for the construction of a cottage, plaintiff agreed to furnish the materials to the contractor for a specified price, payments to be guaranteed by the owner. Subsequently, and while the owner owed the contractor between $600 and $700, he abandoned the work and the contract was canceled, whereupon the owner paid plaintiff $600 on account of materials furnished, and notified it of the cancellation of the contract, at the same time ordering goods to be delivered for the completion of the cottage, employing the contractor by the day to finish the job. *Held*, that the owner under such circumstances did not assume the position of completing the work under the contract, but, on the contrary, canceled the contract with plaintiff's knowledge, so that the subsequent materials purchased were sold to the owner on his individual credit.

> [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 272.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Nassau County.

Action by the Wood Manufacturing & Realty Company of Long Island against Henry F. Thompson and others. From a judgment for plaintiff, defendants Thompson and the Thompson Land & Water Company, appeal. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

James L. Dowsey (Frederick C. Simons, on the brief), for appellants.

John P. Everett, for respondent.

WOODWARD, J. On or about the 3d day of April, 1909, the defendant Henry F. Thompson entered into a contract with Thomas Bletcher, one of the defendants in this action, wherein Bletcher agreed to provide the materials and perform all of the work necessary in the construction of a cottage to be built at Manhasset, Long Island, for the defendant Thompson. The agreed price was $4,757.98. The defendant Bletcher submitted an estimate of the materials necessary for the construction of the cottage to the plaintiff for the purpose of procuring a bid upon the price of such materials, and the plaintiff offered to provide the same at an agreed price of $3,357, the payments to be guaranteed by the owner of the premises, the defendant Thompson. The guaranty was given and the plaintiff began the delivery of materials; Bletcher receiving them, in behalf of the defendant Thompson, under his contract to construct the cottage. Subsequently, and while the defendant Thompson owed Bletcher between $600 and $700, the latter abandoned the work and the contract was canceled. Thompson then paid the plaintiff $600 on account of the materials furnished to Bletcher, and notified the plaintiff of the cancellation of the contract, at the same time ordering goods to be delivered for the completion of the cottage. Thompson employed Bletcher by the day to complete the job. Later the plaintiff filed a notice of lien, and an action to foreclose the lien resulted in a judgment in favor of the plaintiff for the sum of $1,479.74, from which the defendants Thompson appeal.

The theory of the appellants is that Thompson undertook to complete the work under the contract, and that he is liable only for the amount of money which was involved in the guaranty of the price of the materials to be used under the contract with Bletcher; but we are of the opinion that this position is not tenable. The evidence shows clearly that the contract between Thompson and Bletcher was canceled, that it ceased to have any binding force as between them, and that Thompson simply took the position of completing the construction of the cottage by purchasing his own materials and hiring Bletcher to do the work by the day. He was not completing the work under the contract with Bletcher. He never attempted to hold Bletcher to the performance of his contract, or to impose any burden of damages upon him. He consented to let Bletcher off, and undertook to do the work through his own employés; and the plaintiff, having notice of this change in conditions, consented to sell Thomp-

son the materials, and the judgment of the court merely. calls upon Thompson to pay for the goods which he purchased subsequent to the cancellation of the contract between Thompson and Bletcher.

When the rulings of the court are considered in connection with the obviously correct theory of the case, they are not open to objection; and we are of the opinion that the findings of fact are fully supported by the evidence, and the conclusions of law flow naturally from the facts thus found.

The judgment appealed from should be affirmed, with costs. All concur.